In the Matter of the Judicial Settlement of the Account of Proceedings of HELEN EDNA McLAUGHLIN as Executrix, etc., of WILLIAM W. McLAUGHLIN, Deceased.

HELEN EDNA McLAUGHLIN, Individually and as Executrix, etc., of WILLIAM W. McLAUGHLIN, Deceased, Appellant; CITY BANK FARMERS TRUST COMPANY, as Successor Executor, etc., of WILLIAM W. McLAUGHLIN, Deceased, and Others, Respondents.

In the Matter of the Judicial Settlement of the Account of HELEN EDNA McLAUGHLIN, as Trustee under the Last Will and Testament of WILLIAM W. McLAUGHLIN, Deceased.

HELEN EDNA McLAUGHLIN, as Trustee under the Last Will and Testament of WILLIAM W. McLAUGHLIN, Deceased, Appellant; CITY BANK FARMERS TRUST COMPANY, as Substituted Trustee under the Last Will and Testament of WILLIAM W. McLAUGHLIN, Deceased, and Others, Respondents.

(Consolidated Appeals.)

First Department, June 19, 1940.

*Irving H. Saypol* of counsel [*Leo Kotler* and *Samuel Lawrence Brennglass* with him on the brief; *Saypol & Kotler*, attorneys], for the appellant.

*James D. Ouchterloney* of counsel [*Earle J. Starkey* with him on the brief; *Mitchell, Taylor, Capron & Marsh*, attorneys], for the respondent City Bank Farmers Trust Company, and John W. Hannon, special guardian.

*Sidney B. Cardozo* and *Andrew D. Weinberger* of counsel [*Andrew D. Weinberger*, attorney, for Mary Ziegfeld and DeLories Z. Noel; *Cardozo & Nathan*, attorneys, for Irene N. Coffey; *Frank S. Stevens, Jr.*, formerly special guardian, now attorney, for Joseph W. Coffey], for said respondents.

*Stanley E. Anderson*, for the respondent Natalie Coffey Mathews.

PER CURIAM. An examination of the record concerning the validity of the $45,000, $9,000 and $900 checks dated October 7, 1933, leads us to the conclusion that there was ample evidence to support the findings of the referee that the checks in question were signed by the testator on October 7, 1933, under the circumstances testified to by the witnesses Duckworth and Cording, and the referee properly dismissed the objections to the $9,000 and $900 checks and sustained the accountant's claim to the $45,000 check.

An examination of the entire record tends to sustain the referee's conclusion. This litigation is a bitterly contested family quarrel or series of quarrels, the seeds of which were sown prior to decedent's death. The referee said in his report: " The circumstances connected with these checks were the subject of much testimony. I will say at the outset that it is impossible to reconcile the conflicting proof. Even the testimony of witnesses apparently disinterested was so tinged and colored with the bias and the passionate prejudice that pervaded the hearings, that the finding of the truth became so much more difficult."

The record before us contains 3,148 pages; more was omitted pursuant to stipulation. There were sixty-five hearings; a wide latitude in proof was allowed to both sides; and on some of the many objections raised the referee found a complete failure of proof. Accordingly this is peculiarly a case in which the findings of the trial court who had the opportunity of seeing the witnesses and observing them as they testified should be disturbed only if they are against the weight of the credible evidence. We think his findings are clearly supported by the weight of the credible evidence. The learned surrogate in his opinion expressly stated he did not seek to substitute his own view on the matter of the credibility for the view of the referee, yet it seems it was necessary to do so in order to reach a conclusion overruling the referee's recommendations. If the referee properly accepted the testimony of the accountant's witnesses on this issue such finding should not be overruled because of the accountant's failure immediately to claim the $45,000 check. In view of the nature of the litigation that has preceded and followed the testator's death one would not have to go far to seek reasons for such action. Moreover, in connection with these checks the accountant's proof was supported by a great amount of documentary evidence that was in existence long before this litigation arose.

In the decedent's will he directed that on his death his body be buried with that of his wife who had predeceased him, and stated: " My executrix is directed to carry out the details of my funeral and burial, in the manner and form described by me to her." On this proceeding the executrix was precluded from disclosing these wishes, but the testimony shows there had been elaborate negotiations continued for a long time prior to decedent's death with respect to the purchase of the plot in Kensico Cemetery. The accountant doubtless thought she was doing what was right in connection with the Kensico transaction in carrying out her father's wishes. But she adopted wrong means to accomplish that end and her action cannot be justified. On the findings of the referee with respect to the Kensico transaction, and for the reasons stated in his report, we think the executrix was properly removed both as the executrix and as trustee. In the light, however, of the entire record which we have examined it was improper to surcharge the accountant for one-half the costs of the reference.

In view of the undisputed facts with regard to the rental of the apartment at 825 Fifth avenue for the period from November 1, 1933, to June 30, 1934, we are of opinion that the accountant should not have been surcharged for the rental for such period.

The decrees appealed from should be modified in accordance with this opinion and, as so modified, affirmed.

Present — MARTIN, P. J., GLENNON, UNTERMYER, DORE and COHN, JJ.

Decrees unanimously modified in accordance with opinion and, as so modified, affirmed. Settle order on notice.